**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| AIRCRAFT TECHNICAL PUBLISHERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVANTEXT, INC., <br><br> Defendant. <br><br> And related counter-suits. | No. C 07-04154 SBA <br><br> **ORDER** <br><br> [Docket Nos. 31, 40] |

**REQUEST BEFORE THE COURT**

Before the Court is the Motion of Defendant Avantext, Inc. to Dismiss without Prejudice (the "Motion") [Docket No. 31], plaintiff's Opposition to the Motion [Docket No. 49], and defendant's Reply to the Opposition [Docket No. 56]. Also before the Court is plaintiff's Motion for Rule 11 and 28 U.S.C. § 1927 Violations (the "Rule 11 Motion") [Docket No. 40], defendant's Opposition to the Rule 11 Motion (the "Rule 11 Opposition") [Docket No. 52], and plaintiff's Reply to the Rule 11 Opposition (the "Rule 11 Reply") [Docket No. 53].

In the Motion, defendant Avantext, Inc. seeks to dismiss this matter, under Federal Rule of Civil Procedure 41(b), on the grounds plaintiff Aircraft Technical Publishers, Inc. ("ATP") has failed to prosecute this matter. Specifically, Avantext alleges ATP delayed serving its complaint, responding to Avantext's counter-claim, and filing a non-opposition to Avantext's motion to stay. ATP argues the Court should deny the Motion because Avantext inappropriately argues a laches defense rather than any failure to prosecute. ATP further argues, under the factors established by the Ninth Circuit in *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986), dismissal would be inappropriate under Rule 41(b), because this matter was filed only nine months ago. Lastly, in its Rule 11 Motion, ATP seeks sanctions against Avantext for filing the Motion.

///

The Court finds this matter suitable for disposition without a hearing, and for the reasons discussed below, DENIES the Motion, as ATP has not failed to prosecute its case, under Rule 41(b). Further, the court DENIES the Rule 11 Motion, as Avantext filed its Motion with reasonable grounds and in good faith.

**BACKGROUND**

**I.     The Parties**

Plaintiff ATP, a California corporation, is allegedly a worldwide leader in reproducing computer-based information and data regarding airworthiness requirements and other directives for non-commercial aircraft.  Docket No. 1 ¶ 2 (Compl.).  Aircraft owners, mechanics, and others use this information to properly maintain their aircraft.  *Id.*

Defendant Avantext is a Pennsylvania corporation, in the same industry as ATP.  *Id.* ¶ 3.  It sells products designated as the "AD Basic Library," the "AD Small Aircraft Library," the "AD Large Aircraft Library," and the "Complete AD Library" (collectively, the "AD Library Products").  *Id.*

**II.    Developments prior to the 2003 and 2004 suits.**

On April 13, 1994, ATP sued TDATA, Corp., an Ohio corporation, and James Thomas, in this Court, in case number C-94-01253-SBA ("case number 1253").[1]  *See* Docket No. 1-1253.  ATP claimed TDATA had infringed on its copyright and engaged in unfair competition by copying technical information regarding aircraft maintenance and repair, directly out of its publications on these subjects.  *Id.*  On May 20, 1994, the parties settled by stipulating to a permanent injunction, *see* Docket No. 28-1253, and the Court dismissed the matter, *see* Docket No. 29-1253.

About four years later, on July 7, 1998, Michael Sandifer, not a party to this matter, was issued United States Letter Patent number 5,778,381 (the "381 Patent").[2]  Docket No. 1 ¶ 1.  Three years later, on September 18, 2001, he was issued United States Letter Patent number 6,292,806 (the

---

[1]     These persons are not parties to this matter.

[2]     The 381 Patent is titled Computer Aided Maintenance and Repair Information System for Equipment Subject to Regulatory Compliance.  Docket No. 1-1679 ¶ 2; Docket No. 7-1679 at 2:9-10.

2

"806 Patent").[3]  *Id*.  He then assigned these patents (the "Patents-in-Suit") to ATP, who owns all rights, titles, and interests in them.  *Id*.

A little over a year later, on February 21, 2003, ATP wrote to Avantext stating the latter might have an interest in licensing the 381 Patent, the 806 Patent, and United States Patent number 5,987,474 ("the 474 Patent").[4]  Docket No. 16, Ex. "P."  In a letter dated April 14, 2003, Avantext's attorneys responded it did not need a license, because the asserted patents were invalid, and even if not, Avantext had not infringed on them.  Docket No. 15, Ex. "G."

### III. TDATA sues ATP in the Southern District of Ohio, and ATP sues TDATA in the Northern District of California.

On March 27, 2003, TDATA filed a complaint for a declaratory judgment, injunctive relief, and damages against ATP, in the Southern District of Ohio.  Docket No. 7-1679 at 2:4-6.  TDATA asked the court to find the 806 Patent and the 474 Patent were invalid and unenforceable.  *Id.* at 2:6-8.  Over a year later, on April 29, 2004, ATP sued TDATA in the Northern District of California, in case number C-04-1679-VRW ("case number 1679"), for allegedly infringing on the 381 Patent and on ATP's registered trademark, by selling certain products, including one called IApproach.  Docket No. 1-1679 ¶¶ 1, 3.

Less than a month later, on May 21, 2004, TDATA amended its complaint in the Southern District of Ohio, to include the 381 Patent.  Docket No. 7-1679 at 2:8-10.  Seven days later, it moved in the Northern District to dismiss or transfer case number 1679 to the Southern District of Ohio.  *See* Docket No. 10-1679.  On June 24, 2004, ATP filed a Notice of Related case, claiming case number 1679 was related to terminated case number 1253, on the grounds it had been settled by an ongoing preliminary injunction.  *See* Docket No. 18-1679.  On July 26, 2004, this Court declined to relate case number 1679 to case number 1253.  *See* Docket Nos. 33-1253, 35-1679.  On October 18, 2004, case number 1679 was transferred to the Southern District of Ohio, *see* Docket No. 42-1679,

///

---

[3]  The 806 Patent has the same title as the 381 Patent.  Docket No. 7-1679 at 2:7-8.

[4]  This patent has the same title as the 381 and 806 Patents.  Docket No. 10-1679 at 2:9-11.

where it was then consolidated with the existing Southern District of Ohio litigation, *see* Docket No. 15, Ex. "K."

In late Summer 2007, after discovery ended in the consolidated matters, TDATA filed requests with the Patent and Trademark Office (PTO) to reexamine the 381 Patent, the 474 Patent, and the 806 Patent. *See* Docket No. 15, Exs. "L" - "N." The PTO granted the requests in November 2007, finding they "raised a substantial new question of patentability." *See id.* In response, the Southern District of Ohio, stayed the matters before it, on the grounds reexamination could simplify the issues and streamline further proceedings, including trial. *Id.*, Ex. "O."

**IV.  ATP sues Avantext in the Northern District of California**.

ATP never responded to the April 14, 2003 letter from Avantext's attorneys. Docket No. 15, Ex. "G." More than four years later, on August 13, 2007, ATP sued Avantext in this matter, claiming Avantext had infringed on the Patents-in-Suit, by incorporating ATP's patented technology into its AD Library Products. Compl. ¶¶ 1, 5, 9-24. The Court set a case management conference ("CMC") for November 28, 2007. Docket No. 2. On November 26, 2007, as the parties indicated a desire to engage in settlement discussions, the Court continued the CMC to March 5, 2008. Docket No. 5. On December 26, 2007, Avantext answered, asserting affirmative defenses, and counter-complaining, requesting declarations of non-infringement, and/or patent invalidity or unenforceability. Docket No. 7.

On January 15, 2008, Avantext filed a Motion for Stay of the Proceedings in this Action Pending the Outcome of Reexaminations of the Patents in Suit (the "Motion to Stay"). *See* Docket No. 12. In it, they requested the Court stay this matter pending the PTO's reexamination of the Patents-in-Suit. *See id.* On February 11, 2008, ATP filed a reply to Avantext's counterclaim. *See* Docket No. 20. On February 12, 2008, ATP filed a statement of non-opposition to the Motion to Stay. *See* Docket No. 23. On March 5, 2008, the Court held a case management conference (CMC) to discuss this and other issues. *See* Docket No. 27. The Court took the Motion under submission and continued the CMC to April 3, 2008, so the parties could obtain a time frame for reexamination from the PTO, and provide this information in their next CMC statement. *See id.*

///

On April 2, 2008, ATP filed a Status Report of Ex Parte Reexamination of Patents-in-Suit. *See* Docket No. 28. According to the report, ATP was unable to obtain any specific information regarding the patents being reexamined, save that the average examination times suggested an end date one to one-and-a-half years in the future. *See id*. On April 3, 2008, the Court held a CMC, and ruled it would not stay this matter, pending reexamination by the PTO, and instructed the parties to file a joint CMC statement with scheduling suggestions, ten days in advance of the next CMC, set for May 28, 2008. *See* Docket No. 30.

On April 28, 2008, the Court issued its order denying the stay. *See* Docket No. 38. On April 15, 2008, Avantext filed its Motion seeking to dismiss this matter without prejudice, under Rule 41(b). *See* Mot. at 1. In it, Avantext claims ATP repeatedly delayed prosecuting its case by waiting nearly four years to file its complaint, serving its complaint 120-days after filing suit, replying to Avantext's counterclaim forty-five days after it was filed, and filing a non-opposition to Avantext's motion to stay a week after a response was due. *See id*. at 5, 7-8. Avantext further argues that because the PTO's reexamination may narrow the issues significantly, dismissal without prejudice would more expeditiously resolve this case. *See id*. at 6:9-19.

ATP filed its Opposition on June 2, 2008, arguing Avantext inappropriately focuses on pre-filing delays, thus raising a laches defense, rather than showing a failure to prosecute under Rule 41(b). ATP further argues, under the factors established by the Ninth Circuit in *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986), dismissal would be inappropriate under Rule 41(b), because this matter was filed only nine months ago. On June 10, 2008, Avantext filed its Reply to ATP's Opposition, largely repeating the arguments in its Motion.

In addition to its Opposition, on May 20, 2008, ATP filed its R. 11 Motion requesting sanctions against Avantext for filing the Motion. Avantext filed an opposition on June 3, 2008, and ATP filed a reply on June 10, 2008.

///

///

///

///

5

# DISCUSSION

## I. Dismissal is Unwarranted Under Federal Rule of Civil Procedure 41(b).

### A. Legal Standard

Federal Rule of Civil Procedure 41(b) states, in part, "If the plaintiff has failed to prosecute ... a defendant may move to dismiss the action or any case against it." Fed. R. Civ. P. 41(b). However, "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson*, 779 F.2d at 1423.

> [A] district court [is] required to weigh several factors in determining whether to dismiss [a] case for lack of prosecution:  (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.

*Id.*

### B. Analysis

#### 1. The public's interest in the expeditious resolution of litigation does not favor dismissal.

The public has an interest in moving cases along expeditiously.  Avantext argues this interest would be served by dismissal without prejudice, pending reexamination by the PTO, as reexamination may remove some of the ATP's claims.  *See* Mot. at 6:9-23.  ATP argues dismissal without prejudice would not "resolve" anything, but merely delay resolution.  *See* Opp'n at 5:17-22. It also argues Avantext's assertion that the PTO reexamination may save the parties from additional labor has never been held a proper ground for a dismissal under Rule 41(b). *See id*. at 5:23-6:2.

The Court agrees with ATP that, despite the likelihood the PTO reexamination may narrow the triable issues in this case, such a showing does not support dismissal under Rule 41(b).  This rule requires a plaintiff's failure to prosecute interfere with the public's interest in expeditious litigation by causing unreasonable delay.  *See Hernandez v. City of El Monte*, 138 F.3d 393, 400 (9th Cir. 1998).  As discussed in part II below, however, Avantext fails to show any unreasonable delay. Instead, by relying on the potential benefits of waiting for the PTO reexamination, it effectively

6

1  argues for a stay. The Court, however, already ruled it would not stay this matter.[5]  Nor do
2  Avantext's long-term "efficiency" arguments show ATP has failed to prosecute its case.
3      In its reply, Avantext asserts dismissal would serve the public interest by preventing
4  inconsistent results. *See* Reply at 3:21-27. The Court disagrees. First, in the unlikely event the
5  PTO finishes its reexamination before the Court disposes of this matter, the Court may incorporate
6  the PTO's results into its disposition. Alternatively, should the Court dispose of this matter before
7  the PTO completes its reexamination, then the Southern District of Ohio may incorporate this
8  Court's disposition into its own, mooting the need for the reexamination. Further, Avantext fails to
9  explain how delaying this matter indefinitely, to avoid the mere speculative possibility of
10 inconsistent results, would serve the public's interest in expeditiously resolving it. Thus, for the
11 foregoing reasons, as Avantext has not shown dismissal would serve the public's interest in the
12 expeditious resolution of this matter, this *Henderson* factor does not favor dismissal here.

**2.     The Court's interest in managing its docket does not favor dismissal.**

14     The Court has an interest in managing its docket. *Henderson*, 779 F.2d at 1423. However,
15 this interest "does not favor dismissal where the action was in fact prosecuted within the guidelines
16 suggested by the Federal Rules of Civil Procedure." *Hernandez*, 138 F.3d at 401. Moreover, only
17 unreasonable delays will support a dismissal. *Henderson*, 779 F.2d at 1423.
18     Here, Avantext complains primarily of two delays by ATP. *See* Docket No. 31 at 7:21-28.
19 First, it argues ATP delayed by serving its complaint 120 days after filing it. However, as ATP
20 correctly asserts, this complies with Federal Rule of Civil Procedure 4(m), and thus does not favor
21 dismissal. *See* Opp'n at 3:20-21. Second, Avantext argues ATP delayed by waiting nearly four
22 years from when it first contacted Avantext about patent infringement in 2003 to when it filed its
23 complaint in 2007. *See* Mot. at 7:21-24. ATP argues *pre-filing* delays are relevant only in a laches
24 analysis, not in a Rule 41(b) analysis. *See* Opp'n at 2:16-27. As the Ninth Circuit has held, a failure
25 to prosecute relates only to delays *after* suit is filed. *Nealey v. Trans. Mexicana S.A.*, 662 F.2d 1275,
26 1280 (9th Cir. 1980). Thus, ATP's delay in filing is irrelevant and does not favor dismissal.

---

[5]  The Court has suggested the parties agree to some form of voluntary dismissal, but they are apparently unwilling to do so.

1    The Motion also references some minor delays by ATP in answering Avantext's
2 counter-claim, not opposing Avantext's motion to stay, and getting a status report from the PTO.
3 None of these delays, however, is unreasonable or sufficiently extreme to warrant dismissal.
4    In its reply, Avantext asserts that even without any one major delay, the fact no "substantive
5 progress" has been made since suit was filed nine months ago, suggests a pattern of delay. Reply
6 at 3:5-7. However, because the parties were both seeking a stay for much of that time, and as
7 neither party has yet requested a trial date, the Court finds no merit in this argument. Lastly, ATP
8 indicates that should the Motion be granted, it intends to re-file immediately. Opp. at 5:8-14. Thus,
9 a dismissal without prejudice would do little to assist the Court in managing its docket. As such, for
10 all the foregoing reasons, the second *Henderson* factor does not favor dismissal here.

11    **3.    The absence of any risk of prejudice to Avantext does not favor dismissal.**
12    "A presumption of prejudice arises from the plaintiff's failure to prosecute." *Hernandez*, 138
13 F.3d at 400. Indeed, "the law will presume injury if the plaintiff has caused unreasonable delay."
14 *Id.* at 401. Under this factor, however, Avantext fails to show any failure to prosecute or any
15 unreasonable delay by ATP. *See* Mot. at 9-10. Instead, Avantext repeats its earlier argument that
16 the PTO's reexamination may resolve some claims in this suit. *See id.* at 9:2-9. Thus, it argues
17 dismissal would prevent the risk of prejudice that arises from defending against a suit that is not
18 ready for adjudication. *See id.* at 11:12-14. Finally, it argues allowing the suit to continue may
19 prejudice it by forcing it to disclose confidential information.
20    ATP argues any "prejudice" that may arise from having to re-litigate portions of the suit,
21 after the PTO reexamination, is not the type of "prejudice" that Rule 41(b) addresses. *See* Opp'n
22 at 6:16-18. Instead, it argues the proper way to address these issues is with a motion to stay, which
23 this Court has previously denied. *See* Docket No. 38.
24    The Court agrees with ATP that a Rule 41(b) motion requires a movant to show a failure to
25 prosecute, and Avantext has shown none. Thus, it cannot show any risk of prejudice by allowing the
26 case to proceed. Also, the Court finds Avantext's argument that they may have to disclose
27 confidential information speculative and irrelevant. A protective order would address any concerns,
28 ///

and moreover, the argument does nothing to show prejudice *from ATP's failure to prosecute*. As such, the third *Henderson* factor does not favor dismissal here.

### 4. The public policy favoring resolution on the merits does not favor dismissal.

The public policy favoring the resolution of cases on the merits generally counsels against dismissal. *Hernandez,* 138 F.3d at 401. Avantext argues that, in this case, resolution on the merits would be *more likely* to occur after the PTO's reexamination, when there would likely be fewer claims at issue. *See* Mot. at 12:3-9. ATP argues that granting the Motion would not serve this public policy, as dismissal without prejudice, by definition, resolves nothing on the merits. *See* Opp'n at 7:11-20. The Court agrees with ATP. Dismissal would resolve nothing at this time. Thus the fourth *Henderson* factor does not favor dismissal.

### 5. The availability of less drastic alternatives does not favor dismissal.

A "district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson*, 779 F.2d at 1424. Avantext argues that dismissal without prejudice is itself a less drastic alternative, as it allows the case to be filed again later. *See* Mot. at 12:14-17. ATP counters that dismissal pending the PTO reexamination is a harsh penalty, with or without prejudice, as dismissal would deprive ATP of its right to "seek redress of its grievances." *See* Opp'n at 8:2-10. The Court agrees that dismissal is a harsh penalty, which it is reluctant to use without first levying less severe sanctions. Here the Court has tried no alternative sanctions for a failure to prosecute, as it has found none needed, absent any unreasonable delay. In its reply, Avantext speculates the only reason ATP would accept a stay, but oppose a dismissal without prejudice, would be to use this suit "as a tool to extort a settlement from Avantext." Reply at 6:6-8. The Court finds this argument unconvincing, as a dismissal without prejudice would do nothing to stop ATP from refiling immediately and allegedly continue to "extort" a settlement from Avantext. Thus, the fifth *Henderson* factor does not favor dismissal here.

**C.   Conclusion**

Accordingly, I the Court DENIES the Motion.

///

9

1  **II.   Sanctions are Unwarranted Under Federal Rule of Civil Procedure 11 and 28 U.S.C.
2       § 1927.**
3       **A.   Legal Standard**
4       Federal Rule of Civil Procedure 11(b) states that by presenting the Court with a pleading,
5  written motion, or other paper, the signer certifies that, to the best of their knowledge, formed after
6  an inquiry "reasonable under the circumstances:"
7            (1)   It is not being presented for any improper purpose, such as to
8       harass, cause unnecessary delay, or needlessly increase the cost of litigation;
9            (2)   the claims, defenses, and other legal contentions are
10      warranted by existing law or by a nonfrivolous argument for extending,
11      modifying, or reversing existing law or for establishing new law;
12           (3)   the factual contentions have evidentiary support or, if
13      specifically so identified, will likely have evidentiary support after a
14      reasonable opportunity for further investigation or discovery; and
15           (4)   the denials of factual contentions are warranted on the
16      evidence or, if specifically so identified, are reasonably based on belief or a
17      lack of information.
18 Fed. R. Civ. P. 11(b).
19      The Supreme Court has held, "Rule 11 imposes a duty on attorneys to certify that they have
20 conducted a reasonable inquiry and have determined that any papers filed with the court are well
21 grounded in fact, legally tenable, and not interposed for any purpose." *Cooter & Gell v. Hartmax
22 Corp.*, 496 U.S. 384, 393 (1990).  The Ninth Circuit has interpreted Rule 11 to forbid the filing of
23 papers that are "frivolous, legally unreasonable, or without factual foundation, even though the
24 paper was not filed in bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).
25 "The key question in assessing frivolousness is whether a complaint states an arguable claim, not
26 whether the pleader is correct in his perception of the law." *Hudson v. Moore Bus. Forms, Inc*., 827
27 F.2d 450, 453 (9th Cir. 1987).  Procedurally, a movant may not file a Rule 11 motion until they have
28 ///

given a respondent at least 21 days to withdraw or otherwise correct the pleading giving rise to the motion.  Fed. R. Civ. P. 11(c)(2).

As for 28 U.S.C. § 1927, it states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Ninth Circuit has interpreted § 1927 to allow for sanctions when an attorney knowingly or recklessly multiplies the proceedings by taking an action that is frivolous.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).

**B.     Analysis**

In its Rule 11 Motion, ATP argues the Motion is frivolous and has no basis in fact or law, and is thus sanctionable.[6]  To support this allegation, ATP asserts two main arguments.  First, it argues the law is clear that pre-filing delays are completely irrelevant for a Rule 41(b) motion, and thus Avantext's laches argument is baseless and frivolous.  R. 11 Mot. at 2:22-24.  Second, ATP argues its alleged delays in service, responding to the counter-claim, and not opposing the stay motion, of which Avantext complained, were de minimis and did not constitute a failure to prosecute, and thus Avantext's Rule 41(b) Motion is sanctionable.  *See* R. 11 Mot. at 4.

In response, Avantext argues it acted with proper purposes, seeking to conserve judicial resources, prevent conflicting results, and expedite disposition of this matter, which provides a legal basis for its Motion.  *See* R. 11. Opp'n at 4; *Henderson*, 779 F.2d at 1423.  Further, it argues it was reasonable to assert laches and three other delays in its Motion to show a "consistent pattern of delay

///

---

[6] The Court notes ATP, in compliance with Rule 11's safe harbor provision, gave Avantext 28 days to withdraw its Motion, before filing the Rule 11 Motion.  *See* Fed. R. Civ. P. 11(c)(2) (must give at least 21 days to cure); R. 11 Mot. at 1; Docket No. 41 (Decl. of Tim Hale).

that has permeated this case," which also provides a legal basis for its Motion. R. 11 Opp'n at 6:5-7; *Henderson*, 779 F.2d at 1424.

With regard to ATP's first argument, the Court notes the Ninth Circuit has held that pre-filing delays are irrelevant for a Rule 41(b) analysis. *See Nealey*, 662 F.2d at 1280. The Ninth Circuit has also held, however, that attorneys and even courts sometimes confuse the grounds for laches with the grounds for dismissal under Rule 41(b). As the Ninth Circuit has stated, "because the policies underlying the two doctrines are much the same, it is not surprising that they have occasionally been treated interchangeably." *Id.* Thus, because Avantext filed its Motion for a proper purpose, and because its confusion was reasonable, it did not engage in sanctionable conduct, under Rule 11(b), by discussing pre-filing delays in its Motion.

With regard to ATP's second argument, the Court agrees the three other delays Avantext relied on in its Motion were not sufficient grounds for dismissal. Nonetheless, the Court agrees with Avantext that they constituted a reasonable attempt to show a pattern of delay. *See* R. 11 Opp'n at 6. As the Ninth Circuit has held, a court is entitled to judge "whether [a] seemingly short delay combined with the history of plaintiff's dilatory actions . . . [produce] an undue burden on the calendar." *Henderson*, 779 F.2d at 1424. Thus, Avantext's reliance on this argument was reasonable and not sanctionable under Rule 11(b).

Lastly, with regard to ATP's § 1927 claim, the Court finds no evidence that Avantext acted knowingly or recklessly to multiply the proceedings. *See* R. 11 Mot. at 6. Thus, sanctions are unwarranted under § 1927.

**C.     Conclusion**

Accordingly, the Court DENIES the Rule 11 Motion.

///
///
///
///
///
///

**CONCLUSION**

Accordingly, the Court DENIES defendant Avantext, Inc.'s Motion to Dismiss Without Prejudice [Docket No. 31], and also DENIES plaintiff Aircraft Technical Publishers, Inc.'s Motion for Rule 11 and 28 U.S.C. § 1927 Violations [Docket No. 40].

IT IS SO ORDERED.

July 1, 2008

_____
Saundra Brown Armstrong
United States District Judge