UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| AIRCRAFT TECHNICAL PUBLISHERS, a California company,<br><br>           Plaintiff,<br><br>      vs.<br><br>AVANTEXT, INC, a Pennsylvania corporation,<br><br>        Defendant. | Case No:  C 07-4154 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND DEFENDANT'S SUMMARY JUDGMENT MOTIONS REGARDING CLAIMS CONSTRUCTION, AND STRIKING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING LACHES AFFIRMATIVE DEFENSE**<br><br>[Docket 100, 106, 110] |

This is a patent infringement action brought by Plaintiff Aircraft Technical Publishers ("Plaintiff") against Defendant Avantext, Inc. ("Defendant").  The Court has original jurisdiction pursuant to 28 U.S.C. § 1331.  The parties presently are before the Court on: (1) Defendant's Motion for Summary Judgment as to Claim Construction (Docket 100); (2) Plaintiff's Cross-Motion for Partial Summary Judgment Regarding Claim Construction (Docket 106); and (3) Plaintiff's Cross-Motion for Partial Summary Judgment Regarding Laches Affirmative Defenses (Docket 110).

Having read and considered the papers filed in connection with this matter, and for the reasons set forth below, the Court:  (1) GRANTS in part and DENIES in part the parties' respective summary judgment motions regarding claims construction, and construes the ten disputed claim terms of United States Patent No. 6,292,806 (hereinafter "the '806 Patent") as set forth below; and (2) STRIKES Plaintiff's motion for summary judgment as to the issue of laches.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

# I.      BACKGROUND

## A.      FACTUAL SUMMARY

Plaintiff is a provider of maintenance and repair information for the aircraft industry and is the holder of the '806 Patent.  The '806 Patent, entitled "Computer Aided Maintenance and Repair Information System for Equipment Subject to Regulatory Compliance," was issued by the United States Patent and Trademark Office ("PTO") on September 18, 2001.  The patent discloses "[a] computer based apparatus which provides access to complex technical information employed to maintain and repair complicated equipment, such as aircraft, to enable compliance with regulatory requirements."  ('806 Patent, Abstract.)  The '806 Patent contains twenty claims, and is a continuation of Patent No. 5,987,474 which is, in turn, a continuation of another patent.  (Id. at 1:8-14.)[1]

According to the specification of the patent, the aviation industry depends upon maintenance and repair publications to ensure compliance with regulatory requirements.  ('806 Patent at 1:17-63.)  These publications contain "complex technical information" and often are updated with new information and new maintenance requirements.  (Id.)  The invention disclosed in the '806 Patent is intended to provide a solution "to facilitate access to, and update of, maintenance and repair information by the aviation industry."  (Id. at 1:49-51.)  Specifically, the system permits a user to search for and manage maintenance and repair publications, as well as related updates, based on the "profile" information selected by the user.  (Id. at 2:45-3:17.)  A profile consists of specific information selected by the user to perform a search of the database.  For example, the user can search for publications and identify "aircraft-specific maintenance tasks" required in those publications—and any updates—by setting the user profile based on a particular make, model and serial number of a particular aircraft.  (Id. at 2:45-50.)  The information is stored in a database which, when queried, will display an index of documents along with any updates or revisions thereto.  (Id. at 61:32-60.)

---

[1] On June 22, 2008, the Court denied Plaintiff's motion for leave to allege infringement claims based on Patent No. 5,987,474.  (Docket 137 at 2-3.)  In the same ruling, the Court denied Plaintiff's motion for an extension of time to serve infringement contentions as to Patent No. 5,778,381.  Therefore, the only patent-in-suit construed herein is the '806 patent.

**B.   PROCEDURAL HISTORY**

On August 13, 2007, Plaintiff filed the instant patent infringement action in this Court accusing Defendant of infringing the '806 Patent.  A total of ten claim terms contained in Claims 8 and 9 are in dispute.  On March 16, 2009, the parties filed a Joint Claim Construction Statement ("Joint Statement") in which each side proposed their respective construction of the disputed claim terms.  (Docket 94.)  Thereafter, the parties submitted cross-motions for summary judgment in which each moved the Court to construe the disputed claims in the manner set forth in their Joint Statement.  (Docket 100, 106.)  Neither of the parties' respective summary judgment motions specifically analyzes any of the disputed claim terms.  In its motion, Plaintiff simply argues that this Court is obligated to follow the ruling of Judge Gregory Frost in the Eastern District of Ohio in the case of TData v. Aircraft Tech. Publishers, No. 03-264, in which the district court construed some of the same claim terms in the '806 Patent that are in dispute here.  (Docket 108, Ex. 1.)  In its cross-motion, Defendant disputes that Judge Frost's decision is controlling, and argues that Court should construe the claims through the pending summary judgment motions instead of conducting a Markman hearing.[2]

Separately, Plaintiff filed a motion for summary judgment as to Defendant's affirmative defense of laches.  (Docket 110.)  In particular, Plaintiff contends that it did not act unreasonably, as a matter of law, by waiting almost six years after becoming aware of Defendant's alleged infringement before filing the instant action.  Plaintiff did not meet and confer with Defendant nor did it file the requisite certification as required by this Court's Standing Orders prior to filing this motion.  In response, Defendant requests that the Court strike the motion for failing to comply with the Court's Standing Orders.

**II.   LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as

---

[2] To construe their disputed claims terms, each party relies on their arguments set forth in the Joint Statement.

1  a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The

2  moving party bears the initial burden of demonstrating the absence of a triable issue of material

3  fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this initial

4  burden, the burden then shifts to the non-moving party to present specific facts showing that

5  there is a genuine issue for trial.   Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita

6  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

7          "Claim construction is a question of law properly decided on summary judgment."

8  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd,

9  517 U.S. 370 (1996); Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en

10  banc).  In construing a claim, a court looks first to intrinsic evidence, consisting of the claim

11  language, the patent specification, and the prosecution history to the extent that it is part of the

12  record.  Id. at 1313.  "The appropriate starting point ... is always with the language of the

13  asserted claim itself."  Comark Commc'n, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir.

14  1998).[3]  The specification is also highly instructive and is the "single best guide to the meaning

15  of a disputed term[.]"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

16  As for the preferred embodiment, it "can shed light on the intended scope of the claim," but it

17  should not as a general matter be construed to limit the scope of a patent claim.  C.R. Bard Inc.

18  v. United States Surgical Corp., 388 F.3d 858, 865 (Fed. Cir. 2004); Phillips, 415 F.3d at 1323

19  ("although the specification often describes very specific embodiments of the invention, we

20  have repeatedly warned against confining the claims to those embodiments")..

21          Extrinsic evidence may be considered only if necessary to assist the court in

22  determining the meaning or scope of technical claim terms.  Vitronics Corp. v. Conceptronic,

23  Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).  Extrinsic evidence "consists of all evidence external

24  to the patent and prosecution history, including expert and inventor testimony, dictionaries, and

25  learned treatises."  Phillips, 415 F.3d at 1317.  Courts should not rely on extrinsic evidence in

26

27          [3] A patent consists of an abstract, specification of the invention, a detailed description of the
   preferred embodiment and claims.  See Pandrol USA. LP v. Airboss Ry. Prods., Inc., 320 F.3d

28  1354, 1363 (Fed. Cir. 2003).

claim construction to contradict the meaning of claims that can be discerned from examination

of the claims, the written description, and the prosecution history.  See Pitney Bowes, Inc. v.

Hewlett-Packard Co., 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing Vitronics, 90 F.3d at 1583).

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a

disputed claim term.  In such circumstances, it is improper to rely on extrinsic evidence."

Vitronics, 90 F.3d at 1583.

## III.   DISCUSSION

### A.   PRELIMINARY ISSUES

As a threshold matter, Plaintiff contends, without citation to any relevant legal

authority, that a motion for summary judgment is an improper means to construe the disputed

patent claims.  (Docket 120 at 2-3.)  The Court disagrees.  As set forth above, claim

construction presents a question of law for the Court to decide.  See Cybor Corp., 138 F.3d at

1454.  As such, the Federal Circuit has held that claims may be construed by way of a motion

for summary judgment.  See Gentex Corp. v. Donnelly Corp., 69 F.3d 527, 530 (Fed. Cir.

1995) ("Claim interpretation is a question of law amenable to summary judgment."); accord

Laitram Corp. v. Morehouse Indus., Inc., 143 F.3d 1456, 1462 (Fed. Cir. 1998) (affirming

motion for summary judgment on issues of claim construction).  Also without merit is

Plaintiff's ancillary assertion that Defendant's motion is infirm, ostensibly because it does not

clearly state the relief sought.  (Docket 120 at 2.)   To the contrary, Defendant's moving papers

unequivocally state that the relief sought is to have the disputed claims construed in the manner

advocated by Defendant in the Joint Statement.

Next, the parties dispute the legal significance of a prior claim construction ruling by

Judge Frost in TData Inc. v. Aircraft Technical Publishers, No. 03-264, which involved many

of the same disputed terms at issue in this case.  Without citation to relevant authority, Plaintiff

contends Judge Frost's "order is entitled, as a matter of law, to deference by this Court, and it

should be followed in its entirety."  (Pl.'s Mot. for Partial Summ. J. Re Claim Construction at

2.)  Plaintiff is incorrect.  "While uniformity of treatment of a given patent is important," one

district court is not bound to automatically accept the claim construction of another district

court.  <u>Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.</u>,  540 F. Supp. 2d 1233,

1242 (M.D. Fla. 2008).  Rather, this Court has an independent obligation to construe the claims

in dispute, and to render its own independent claim construction.  <u>Id.</u>  With regard to Judge

Frost's ruling, the Court will certainly consider his analysis, but is not obligated to accord his

decision any particular deference.  <u>See</u> <u>Visto Corp. v. Sproqit Techs., Inc.</u>,  445 F. Supp. 2d

1104, 1108 (N.D. Cal. 2006) (district court may accord another district court's claim

construction deference to the extent it finds the other court's decision persuasive) (Chen, J.).

### B.   DISPUTED CLAIM TERMS

The ten claim terms at issue in the pending summary judgment motions are set forth in

Claims 8 and 9 of the '806 Patent.  The disputed terms are numbered, highlighted in bold and

underlined, as follows:

8.     A [1]**<u>system</u>** to provide information to maintain and repair equipment or provide services, comprising [2]**<u>a program running on a computer</u>** to enable [3]**<u>knowledge-based access to, and management of</u>**, a technical database comprising electronically stored publications which are displayable, the technical database [4]**<u>being structured</u>** to enable a plurality of access modes comprising name of publication, key word, and [5]**<u>identified profile</u>** with migration capability between related records, the computer program [6]**<u>generating</u>** a [7]**<u>compliance record</u>** that contains a list of required maintenance for components associated with the identified profile and status of compliance with maintenance required by the publications for the components associated with the identified profile, the compliance record being stored onto an electronic storage medium.

9.     The system of claim 8 wherein the technical database further comprises a [8]**<u>cumulative index of revisions</u>** to publications and the computer program accesses a [9]**<u>revision selection list</u>** of revised publications and identifies maintenance required by the publications, the computer program being [10]**<u>responsive to the revision selection list</u>** for updating the compliance record for the identified profile to include maintenance required based on revisions to the publications.

In the sections that follow, the Court will set forth the disputed claim term and Plaintiff and

Defendant's proposed construction of that term, followed by the Court's analysis and

conclusion regarding each disputed term.

### 1. "system"

| Disputed Term | A **system** to provide information to maintain and repair equipment or provide services |
|---|---|
| Plaintiff's Construction | No construction needed because the term appears in the preamble. |
| Defendant's Construction | A program, a technical database, and a single stand-alone computer including hardware components associated with the computer |

The parties dispute the meaning of "system" in Claim 8. ('806 Patent at 83:32.) Plaintiff argues that it is unnecessary to construe this term because it appears in the preamble, and thus, is not intended as a claim limitation. (Jt. Stmt. at 3-4.) Generally, a preamble summarizes the requirements of a claim and is not intended to itself constitute a claim limitation. See Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1371 (Fed. Cir. 2003). A term used in a preamble will not limit the claim if it "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1434 (Fed. Cir. 2000) ("IMS"). However, a preamble may limit claim scope—and require construction if disputed—where it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1305 (Fed. Cir. 2005) (quoting Catalina Mktg Int'l v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002)).

In the instant case, the term "system" as it appears in the preamble "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." IMS, 206 F.3d at 1434. For instance, in IMS, the parties disputed the meaning of "apparatus," which appeared in the preamble. The Federal Circuit held that the preamble simply gave "a descriptive name to the set of limitations in the body of the claim that completely set forth the invention," and that the claim would be infringed by "any apparatus encompassing all of the limitations in the body of the claim." Id. at 1434. Like the term "apparatus" in IMS, the disputed term "system" at issue here merely summarizes the claim limitations that follow the preamble. The term "system" does not recite any "essential structure

1   or steps" nor is it "necessary to give life, meaning, and vitality to the claim."  NTP, Inc., 418

2   F.3d at 1305.  As such, there is no need to construe this term.

3           Even if "system" were intended as a claim limitation, the claim construction proposed

4   by Defendant is untenable.  Defendant purports to construe "system" as "a program, a technical

5   database, and a single stand-alone computer including hardware components associated with

6   the computer."  (Jt. Stmt. at 3-4.)  While the claim and specification indicate that "system"

7   refers to a computer-based program that works in tandem with a database, there is no

8   requirement for the use of "a single stand alone computer" or "hardware components

9   associated with the computer."  (Jt. Stmt. at 3-4.)  Though such hardware is mentioned in the

10  preferred embodiment (see '806 Patent at 3:37-67), there is no indication that the use of such

11  hardware was intended as a limitation in Claim 8.  See Phillips, 415 F.3d at 1323; Comark

12  Comms., Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (same).  In light of the

13  record presented, the Court concludes that no construction of "system" is necessary.  See

14  Altiris, Inc., 318 F.3d at 1371 ("It is well settled that if the body of the claim sets out the

15  complete invention, and the preamble is not necessary to give life, meaning and vitality to the

16  claim, then the preamble is of no significance to claim construction because it cannot be said to

17  constitute or explain a claim limitation.").

18              **2.      "a program running on a computer"**

19

| **Disputed Term** | comprising **a program running on a computer** |
|---|---|
| **Plaintiff's Construction** | one or more computer software programs in operation on one or more computers |
| **Defendant's Construction** | a set of instructions to accomplish a specific task being executed by a single stand alone computer |

24          Next, the parties disagree as to the meaning of "program running on a computer," which

25  also appears in Claim 8 of the '806 Patent.  ('806 Patent at 83:33-34.)  Plaintiff contends that

26  "program" and "computer" should be construed to mean "one or more computer software

27  programs in operation on one or more computers."  (Jt. Stmt. at 8 (emphasis added).)  As a

28  general matter, the Federal Circuit has recognized that an indefinite articles such as "a" or "an"

in a patent claim is presumptively interpreted to mean "one or more."  KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000) (holding that an element of patent requiring "a" continuous chamber was not limited to a single chamber); accord Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342-43 (Fed. Cir. 2008).  Here, although the reference to "program" and "computer" are in the singular, no intrinsic or extrinsic evidence has been offered by Defendant to demonstrate an intent to disclaim the use of multiple programs or computers.  KCJ Corp., 223 F.3d at 1356 (noting that absent any indication to disclaim the use of multiple elements, the singular use of "a" or "an" is to be construed as meaning one or more).

Similarly, there is little, if any, support for Defendant's proposed construction of "program running on a computer" to mean "a set of instructions to accomplish a specific task being executed by a single stand alone computer."  (Jt. Stmt. at 8.)  By definition, a computer program or software is "the set of instructions, known as code, that directs a computer to perform specified functions or operations [.]"  See Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 447 (2007) (internal quotations and citation omitted).  There is no need to construe "program," since neither party seeks to depart from the ordinary meaning of that term.  See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("melting" did not require construction where parties did not deviate from its ordinary meaning).  Moreover, as discussed above, there is nothing in the patent to support the conclusion that the program must be "executed by a single stand alone computer," as suggested by Defendant.  (Jt. Stmt. at 8.)  In accordance with Federal Circuit case law in tandem with the language of Claim 8 and the patent specification, the Court construes "a program running on a computer" as "one or more computer software programs in operation on one or more computers."

//

//

//

### 3.    "knowledge-based access to, and management of"

| Disputed Term | comprising a program running on a computer to enable **knowledge-based access to, and management of**, a technical database…. a technical database comprising electronically stored publications which are displayable, the technical database being structured to enable a plurality of access modes comprising name of publication, key word, and identified profile |
|---|---|
| Plaintiff's Construction | access based on knowledge of the user, and control, which includes any and all changes to the database including but not limited to the creation, deletion, and modification of content |
| Defendant's Construction | using a separate database of external facts and inference rules that enable inferences to be drawn from external facts and then applied to data in a technical database in order to provide access to and management of |

The parties offer divergent constructions of "knowledge-based access to, and management of." ('806 Patent at 83:34-35.) For its part, Plaintiff proposes that the Court follow Judge Frost's interpretation of this term. The Court finds Judge Frost's construction— which is not directly challenged by Defendant—to be logical. Specifically, Judge Frost reasoned that "knowledge-based access" is simply another way of referring to "access based on knowledge," and that the only logical conclusion to be drawn from the claim language is that such knowledge is that of the user. (Slip Op. at 13.) In Judge Frost's view, absent the user's knowledge, "how would a system afford the user access?" (Id.) In addition, the Court notes that Plaintiff's proposed construction is intrinsically supported by the fact that one of the features of the invention is to allow the user to "interact" with the system in order to a access a variety of "complex technical information" stored in the database. ('806 Patent at 1:21, 1:51-54.) This function is repeated in the preferred embodiment, which notes the importance of providing an "intuitive graphical user interface." (Id. at 4:10.) The references to "interact" and "intuitive" connote the significance of the user's role in accessing and manipulating stored information and making it accessible through the system. Indeed, a review of documents cited by Defendant actually supports Plaintiff's proposed construction, as evidenced by Mr. Sandifer's opinion that "'Management' for a database includes all of adding, editing, and deleting any specific data…." (Lavorgna Decl. Ex. 19 at 25.)

The Court is also persuaded by Plaintiff's construction of the second part of the disputed claim term, i.e., "management of." ('806 Patent at 83:35.)  The patent specification states that the system is intended to not only facilitate access to, but also to allow the user to "update" information in the system database, which is consistent with the goal of assisting the user in his or her ability to ensure compliance with regulatory requirements.  (Id. at 1:67-2:3.) "The software is designed for interactivity with the database residing on the hard drive of the computer and includes a way for the user to comment and add expertise to the system by allowing the user to opt for the ability to import data…."  (Id. at 2:30-34.)

Defendant contends that "knowledge-based access to, and management of" should be construed to mean "using a separate database of external facts and inference rules that enable inferences to be drawn from external facts and then applied to data in a technical database in order to provide access to and management of."  (Jt. Stmt. at 11-12.)  Aside from the fact that Defendant's proposed construction is unintelligible, none of the various dictionary definitions or various intrinsic and extrinsic evidence cited by Defendant (Jt. Stmt. at 10-15) supports the proposed construction.  Thus, the Court construes the disputed claim term to mean "access based on knowledge of the user, and control, which includes any and all changes to the database including but not limited to the creation, deletion, and modification of content."

### 4.    "being structured"

| Disputed Term | the technical database **being structured** to enable a plurality of access modes comprising name of publication, key word, and identified profile with migration capability between related records |
|---|---|
| Plaintiff's Construction | no construction needed due to plain meaning, but if construed, the proposed construction is "set up or arranged" |
| Defendant's Construction | being organized or arranged, in a manner other than a one-dimensional database approach, which allows the same place to be reached through different methods |

The parties dispute the term "being structured" as it appears in the following sentence: "A system to provide information to maintain and repair equipment or provide services, comprising a program running on a computer to enable knowledge-based access to, and

1   management of, a technical database comprising electronically stored publications which are

2   displayable, the technical database <u>being structured</u> to enable a plurality of access modes,…"

3   ('806 Patent at 83:32-37.)  Plaintiff contends that the "being structured" needs no construction

4   because in context, the term means simply that the database (which stores the aircraft technical

5   information) must be set up in a manner that allows information to be accessible from a variety

6   of "modes."  The Court concurs with this construction.  As illustrated by the preferred

7   embodiment, the system discloses various modes that can be selected by the user to facilitate

8   his or her search of the database.  Among others, there is "an aircraft specific mode," which

9   allows the user to search the database based on the particular make, model and serial number of

10  the aircraft.  (<u>Id.</u> at 2:45-49.)  Another is the "bookshelf mode," which allows access to

11  information based on the subject and title of the publication.  (<u>Id.</u> at 3:5-7.)  Thus, it is evident

12  the "being structured" means that the database must be set up in a fashion which enables it to

13  provide the user with access to information based on the type of query or mode being used.

14       Defendant argues that "being structured" means "being organized or arranged, in a

15  manner other than a one-dimensional database approach, which allows the same place to be

16  reached through different methods."  (Jt. Stmt. at 16.)  There is nothing in the claim or patent

17  specification to support this assertion.  Instead, Defendant again relies on the statement of

18  Plaintiff's expert Mr. Sandifer in his expert report submitted during the reexamination process.

19  In his report, Mr. Sandifer opined that certain prior art was distinguishable because it "appears

20  to manage all its data using a one-dimensional database approach…."  (Lavorgna Decl. Ex. 19

21  at 25.)  However, there is nothing in the claim language or specification to support the notion

22  that Plaintiff intended to limit "being structured" to the use of a one-dimensional database.  <u>See</u>

23  <u>Linear Tech. Corp. v. Int'l Trade Com'n</u>, 566 F.3d 1049, 1058 (Fed. Cir. 2009) (statements

24  made during patent prosecution insufficient to establish a "clear and unmistakable" intent to

25  limit scope of a claim in a manner different from the claim language).  In sum, the Court

26  concludes that the claim term "being structured" means "set up or arranged."

27

28

### 5.    "identified profile"

| Disputed Term | the technical database being structured to enable a plurality of access modes comprising name of publication, key word, and **identified profile** with migration capability between related records |
| --- | --- |
| Plaintiff's Construction | data that identifies a given subject, such as a component or components |
| Defendant's Construction | a list of one or more of the manufacturer, make and model numbers, including their synonyms |

The parties dispute the meaning of "identified profile," which is used in Claim 8 as follows:  "the technical database being structured to enable a plurality of access modes comprising name of publication, key word, and underlined identified profile with migration capability between related records,…" ('806 Patent at 83:37-39.)   Plaintiff contends that this claim term should be construed generally to mean data that identifies one or more components of a particular subject.  In contrast, Defendant asserts that the claim imposes a limitation based specifically on the manufacturer, make and model of a particular aircraft.  (Jt. Stmt. at 18-20.)

The patent specification indicates that a "profile" refers to a "component" (i.e., characteristic) or a set of components selected by the user to facilitate his or her search for information contained in the database.  (Id. at 2:57-58; 31:3-5.)  For instance, a user can set up the profile based on the specific make, model and serial number of an aircraft.  (Id. at 2:48-49.)  Alternatively, the user may customize a profile based on user-specific criteria other than the make and model of an aircraft.  (Id. at 2:28, 3:312-13, 5:12-13.)  This flexibility is illustrated in the preferred embodiment, which also envisions that the user may utilize an existing aircraft profile or customize a profile based on one or more data components.  (Id. at 30:30-34, 30:42-44, 31:1-7.)  Thus, while an "identified profile" may consist of an aircraft manufacturer, make and model number, such a profile is not limited, as Defendant suggests, exclusively to those particular criteria.  Accordingly, the Court construes "identified profile" to mean "data that identifies a given subject, such as a component or components."

### 6.    "generating"

| Disputed Term | the computer program **generating** a compliance record that contains a list of required maintenance for components associated with the identified profile and status of compliance with maintenance required by the publications for the components associated with the identified profile, the compliance record being stored onto an electronic storage medium. |
|---|---|
| **Plaintiff's Construction** | no construction needed due to plain meaning |
| **Defendant's Construction** | automatically producing |

Plaintiff argues that the term "generating" needs no construction, while Defendant contends that it means "automatically producing."  (Jt. Stmt. at 20-24.)  Based on the plain language of the claim, it is clear that in the context used, the term "generating" is synonymous with "producing."  In other words, operation of the "computer program" generates or produces "a compliance record."  Because "generating" has the same meaning "producing" in the context in which the term is used, the Court need not construe this term.  See Static Control Components, Inc. v. Lexmark Int'l., Inc., 502 F. Supp. 2d 568, 576 (E.D. Ky. 2007) ("simply swapping words with synonyms is not construction.").  As for Defendant's contention that the compliance record must be produced or generated "automatically," that limitation appears nowhere in the claim or the specification.  The Court finds that no construction of "generating" is required.

//

//

//

//

//

//

//

### 7. "compliance record"

| Disputed Term | the computer program generating a **compliance record** that contains a list of required maintenance for components associated with the identified profile and status of compliance with maintenance required by the publications for the components associated with the identified profile, the compliance record being stored onto an electronic storage medium. |
| --- | --- |
| **Plaintiff's Construction** | a record of data that demonstrates compliance or lack of compliance with a requirement |
| **Defendant's Construction** | a full record of compliance listing both the actions required and those taken, and indicating the status of actual compliance. |

The parties offer competing versions of what is meant by "compliance record." Plaintiff asserts that this claim term simply means "a record of data that demonstrates compliance or lack of compliance with a requirement," while Defendant contends that this term should be construed to mean "a full record of compliance listing both the actions required and those taken, and indicating the status of actual compliance." (Jt. Stmt. at 23-25.) The salient difference between the parties' construction is the level of specificity provided by the compliance record.

The Court is persuaded that no construction of "compliance record" is necessary. As set forth above, the meaning of "compliance record" is set forth in the text that follows the reference to that term. The relevant portion of Claim 8 states: "a compliance record that contains a list of required maintenance for components associated with the identified profile and status of compliance with maintenance required by the publications for the components associated with the identified profile…." (Id. at 83:40-44 (emphasis added).) The meaning of "compliance record" is thus clear when read in context and needs no further construction.

//

//

//

//

### 8.   "cumulative index of revisions"

| Disputed Term | "The system of claim 8 wherein the technical database further comprises a **cumulative index of revisions** to publications…." |
|---|---|
| Plaintiff's Construction | no construction needed due to plain meaning |
| Defendant's Construction | the list of all changes made since the first change, but excluding merely updated information |

Plaintiff contends that "cumulative index of revisions" has a "plain meaning" and thus requires no construction.  (Jt. Stmt. at 25.)  In contrast, Defendant argues that this claim term means "the list of all changes made since the first change, but excluding merely updated information."  (Id.)  The Court disagrees with Plaintiff's unsupported assertion that the meaning of "cumulative index of revisions" is sufficiently clear to obviate the need for construction.  See United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir.1997) (claim construction appropriate "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution to determine").  Therefore, the question remains whether Defendant's proposed construction is appropriate.

Defendant cites the preferred embodiment, which notes that "[t]he revision letter index is cumulative in that it includes all changes, not just the changes since the last CD-ROM release."  ('806 Patent at 61:32-34.)  This supports Defendant's contention that the "cumulative index of revisions" necessarily includes "the list of all changes [to publications] made since the first change…."  (Jt. Stmt. at 25.)  However, it does not support the second aspect of Defendant's proposed construction, as it makes no mention of "excluding merely updated information."  To the contrary, the preferred embodiment specifies that the cumulative list includes "all" changes, and not only the most recent changes.[4]  As such, the Court construes the

---

[4] Equally unhelpful is Defendant's citation to Mr. Sandifer's expert report which, as noted, was submitted during the reexamination process of the '806 Patent.  (Jt. Stmt. at 26; Lavorga Decl. Ex. 17.)  Defendant cites generally to twenty pages of the report without identifying specifically what and where in the report Defendant's proposed construction of "cumulative index of revisions" is supported.  (Lavorga Decl. Ex. 17 at 69-89.)  Nevertheless, the Court has independently reviewed the cited pages of the Sandifer report and has found no support for Defendant's position.

claim limitation "cumulative index of revisions" to mean "the list of all changes made to publications since the first change."

### 9.   "revision selection list"

| Disputed Term | The system of claim 8 wherein the technical database further comprises a cumulative index of revisions to publications and the computer program accesses a **revision selection list** of revised publications and identifies maintenance required by the publications, the computer program being responsive to the **revision selection list** for updating the compliance record for the identified profile to include maintenance required based on revisions to the publications. |
|---|---|
| **Plaintiff's Construction** | a list of items having revisions, for example, revised publications, from which one or more items may be selected |
| **Defendant's Construction** | a list of revised publications from which individual revised publications can be selected but excluding an up-to-date list |

The first question presented regarding this term is whether the "list" (which is part of "revision selection list") referenced in Claim 9 is limited to "publications," as advocated by Defendant, or alternatively, whether the "list" refers more generally to "items" in the database that have been revised as claimed by Plaintiff.  Neither party is entirely correct.  The language of Claim 8 as well as the patent specification clearly state that the revision selection list refers to changes or updates to "publications."  Claim 9 expressly provides that the system tracks any "revisions to publications" and allows the user to identify, perform and comply with any "maintenance required based on revisions to publications."  ('806 Patent at 83:47-84:4 (emphasis added).)  Thus, the Court construes "revision selection list" to mean a list of "revisions to publications" as proposed by Plaintiff—as opposed to either "a list of items having revisions" or "a list of revised publications," as advocated by Defendant.

With respect to the issue of what the user may select from this list of revisions to publications, Defendant argues that Claim 9 includes a limitation that the user cannot select revisions to publications from an "up-to-date list."  (Jt. Stmt. at 26.)  As support, Defendant relies on the description of the preferred embodiment, and in particular, the discussion concerning changes in maintenance and repair publications.  (Id. (citing '806 Patent at 61:19-

58).)  However, there is no discussion of an "up-to-date list" in this section of the patent.  But even if there were, the law is clear that a court should "not ordinarily rely on the preferred embodiments alone as representing the entire scope of the claimed invention."  <u>CCS Fitness, Inc. v. Brunswick Corp.</u>, 288 F.3d 1359, 1370 (Fed. Cir. 2002).  Thus, the Court construes "revision selection list" to mean "a list of revised publications from which individual revisions to publications can be selected."

### 10.   "responsive to revision selection list"

| Disputed Term | the computer program accesses a revision selection list of revised publications and identifies maintenance required by the publications, the computer program being **responsive to the revision selection list** for updating the compliance record for the identified profile to include maintenance required based on revisions to the publications. |
|---|---|
| Plaintiff's Construction | reacting to changes in a selection list |
| Defendant's Construction | automatically updating based on revisions to the publications |

The focus of the parties' final dispute with respect to Claim 9 relates to the effect of the revision selection list on the computer program.  On the one hand, Plaintiff contends that the program <u>reacts</u> to changes in the list, while Defendant asserts that the program is <u>automatically updated</u> as a result of changes to the list.  (Jt. Stmt. at 27.)  In support of its proposed construction, Plaintiff relies on the <u>Tdata</u> decision which ruled that, "The language 'responsive to the revision selection list for updating maintenance required' means 'reacting to changes in a selection list for revising information related to required maintenance.'"  <u>Tdata</u>, Slip. Op. at 20.  However, the <u>TData</u> court provides no analysis to support its construction other than noting that "the clause refers back to the words 'revision selection list' set forth earlier in the same claim…."  <u>Id.</u>  Given its lack of any meaningful analysis, the <u>Tdata</u> court's construction is neither helpful nor instructive on this point.

In contrast, the Court finds that the Defendant's proposed construction accurately describes the interaction between the computer program and the revision selection list under

the '806 Patent.  The language set forth in Claim 9 clearly states that the computer program is used to access the revision selection list, which is a list of revised publications and the maintenance specifically required by those publications.  Based on the information contained in the revision selection list, the program updates both the maintenance requirements and the compliance record for the particular equipment, which corresponds to profile being utilized by the user.  Thus, the program is not merely "reacting to changes in the selection list," as suggested by Plaintiff.   Rather, upon revision to a publication in the database, the program updates the maintenance requirements and compliance record.

Based on the above, the Court construes "responsive to the revision selection list" as "updating based on revisions to the publications."[5]

### C.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LACHES DEFENSE

Plaintiff moves for summary judgment as to Defendant's affirmative defense of laches. (Docket 110.)  In its opposition, Defendant requests that the Court strike Plaintiff's motion on the ground that Plaintiff failed to certify that the parties met and conferred prior to bringing such motion.  In particular, Paragraph 5 of this Court's Standing Order for Civil Cases expressly states, "Meet and Confer Requirement; All parties are required to meet and confer before filing any motion with this court, and to certify that they have complied with this requirement."

Plaintiff has acknowledged its failure to comply with this requirement and has refiled and renoticed its motion for a later date.  Plaintiff should have filed a notice of withdrawal of motion, as required by Civil Local Rule 7-7(d), but failed to do so.  Therefore, the Court denies the instant motion as moot, without prejudice to its consideration of Plaintiff's refiled motion. Accordingly, the Court grants Defendant's request to strike Plaintiff's motion for summary judgment as to Defendant's laches defense, as well as its supporting papers.  (Docket 110, 111, 112.)  The Court will not countenance Plaintiff's continued disregard of the orders and Local Rules of this Court.

---

[5] Defendant did not provide support to include the limitation "automatically" updating.

## IV.    CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.      Defendant's Motion for Summary Judgment as to Claim Construction and Plaintiff's Cross-Motion for Partial Summary Judgment Regarding Claim Construction are GRANTED IN PART and DENIED IN PART, as set forth above.  The Claims of the '806 Patent in dispute shall be construed as follows:

| Claim Term | Construction |
| --- | --- |
| system | none required |
| a program running on a computer | one or more computer software programs in operation on one or more computers |
| knowledge-based access to, and management of | access based on knowledge of the user, and control, which includes any and all changes to the database including but not limited to the creation, deletion, and modification of content |
| being structured | set up or arranged |
| identified profile | data that identifies a given subject, such as a component or components |
| generating | none required |
| compliance record | none required |
| cumulative index of revisions | the list of all changes made to publications since the first change |
| revision selection list | a list of revised publications from which individual revisions to publications can be selected |
| responsive to the revision selection list | updating based on revisions to the publications |

1    2.    Plaintiff's Cross-Motion for Partial Summary Judgment Regarding Laches

2    Affirmative Defenses is STRICKEN and DENIED AS MOOT.

3    3.    This Order terminates Docket Nos. 100, 106 and 110.

4    4.    The Clerk shall STRIKE Docket Nos. 110, 111 and 112 from the record.

5    IT IS SO ORDERED.

6

7    Dated: November 10, 2009

8    SAUNDRA BROWN ARMSTRONG
     United States District Judge